**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TIMOTHY E. AMBROSINI,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 10-89** |
| | ) | **Electronically Filed** |
| **v.** | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

### I.     Introduction

Plaintiff Timothy E. Ambrosini (hereinafter "Ambrosini") brings this action pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3), seeking review of the final determination of the Commissioner of Social Security (hereinafter "Commissioner") denying his application for supplemental security income (hereinafter "SSI") under Title XVI of the Social Security Act (herein after the "Act").  42 U.S.C. §§ 1381-1383f.  Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment on the record developed during the administrative proceedings.  Doc. Nos. 8, 9.

After careful consideration of the Commissioner's decision, the parties' briefs in support of their motions, and the entire evidentiary record, this Court finds that the Commissioner's decision must be vacated.  Therefore, this Court will **DENY** the Commissioner's motion for summary judgment.  Doc. No. 9.  This Court will **GRANT** Ambrosini's motion for summary judgment insofar as it seeks a vacation of the administrative decision under review, and remand the case for further administrative proceedings. Doc. No. 8.

## II. Procedural History

Ambrosini applied for SSI benefits in the present case on July 13, 2007, alleging disability as of July 13, 2007, due to agoraphobia, paranoia, dependent personality disorder, depression, anxiety, bipolar disorder, back pain, high cholesterol and drug addiction. Transcript of SSA Proceedings (Doc. No. 6) at R. 190. [1] Ambrosini's application was denied by the state agency on March 6, 2008. R. 66-69. Ambrosini responded by filing a timely request for an administrative hearing. R. 8. On March 11, 2009, a hearing was held in Morgantown, West Virginia, before Administrative Law Judge George A. Mills III (herein after the "ALJ"). Ambrosini, who was represented by counsel, appeared and testified at the hearing. [2] R. 8-22. Lawrence S. Ostrowski, Ph.D., an impartial vocational expert, appeared and testified at the hearing. R. 18.

In a decision dated June 8, 2009, the ALJ determined that Ambrosini was not "disabled" within the meaning of the Act. R. 8-22. The Appeals Council denied Ambrosini's request for review on December 17, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 1-3. Ambrosini commenced this action on January 22, 2010, seeking judicial review of the Commissioner's decision. Doc. No. 3. Ambrosini and the Commissioner filed motions for summary judgment on May 17, 2010. Doc. Nos. 8, 9. These

---

[1] The original "transcript" or record of the SSA proceedings is consecutively numbered. For convenience, this court will use "R.___" to refer to original pages of transcript.

[2] At the hearing, Ambrosini's claim proceeded only on his mental health issues. R. 30. Therefore, as the ALJ did not address any claims of physical impairments and this Court is limited to review of findings upon which the ALJ based his or her decision, this opinion will only address Ambrosini's mental health claims. *See Fargnoli v. Massarini*, 247 F.3d 34, 44 n. 7 (3d Cir. 2001).

motions are the subject of this memorandum opinion.

### III.    STATEMENT OF THE CASE

In his decision, the ALJ made the following findings:

1.    The claimant has not engaged in substantial gainful activity since July 13, 2007, the application date (20 C.F.R. § 416.920 and § 416.971 *et seq*.).

2.    The claimant has the following severe combination of impairments: Depressive disorder; anxiety disorder; dependent personality disorder; substance abuse disorder with a history of narcotic addiction (20 CRF § 416.920(c)).

3.    The claimant's impairments, including the substance use disorders, meet sections 12.04, 12.06, 12.08, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)).

4.    If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

5.    If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)).

6.    If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: work must be unskilled involving simple

instructions and tasks; must be low stress with no rapid production expectations; and involve no more than occasional interaction with supervisors and co-workers and no contact with the general public.

7.     The claimant has no past relevant work. (20 C.F.R. § 416.965)

8.     The claimant was born on May 30, 1970 and was 37 years old, which is defined as a younger individual, on the date the application was filed (20 C.F.R. § 416.963).

9.     The claimant has at least a high school education and is able to communicate in English. (20 C.F.R. § 416.964).

10.     Transferability of job skills is not an issue because the claimant does not have past relevant work experience. (20 C.F.R. § 416.968).

11.     If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform. (20 C.F.R. § 416.960)(c) and § 416.966). R.8-22.

**IV.    Standards of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. § 405(g) [3] and § 1383(c)(3) [4]. Section 405(g) permits a district court to review

---

[3] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . .brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .
42 U.S.C. § 405(g).

[4] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph

transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n. 1 (3d Cir.2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir.1983). The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir.1988).

_____

(1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir.2002), quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir.1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993), quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n. 7 (3d Cir.2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' " Id. at 87; parallel and other citations omitted).

<u>Five Step Determination Process</u>

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987); 42 U.S.C. § 423(d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five-step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir .1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied . . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work . . . .

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step...

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Sub pt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be

deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423(d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir.2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

Vocational Expert-Hypothetical Questions

The determination of whether a claimant retains the residual function capacity (hereinafter "RFC") to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984)(citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir.2002), citing *Podedworny*, 745 F.2d at 218 and *Chrupcala v. Heckler*, 829 F.2d, 1276 (3d

Cir.1987) (leading cases on the use of hypothetical questions to VEs) [5]. *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.' ") Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n. 8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles (hereinafter "DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir.2002); *see also Id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level

_____

[5] Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir.1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,' "), *citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923). Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d).  When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971).  To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in

combination, equal in severity one of the listed impairments. *Fargnoli v. Hatler*, 247 F.3d 34, 40 n. 4 (3d Cir. 2001), *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson v. Schweiker*, 765 F.2d 31, 36(3d. Cir. 1985).

Claimant's Subjective Complaints of Impairments and Pain

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir.1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent

evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir.1999), *relying on Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir.1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green*, 749 F.2d at 1070- 71 (emphasis added), *quoted in Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence*. *Ferguson v. Schweiker*, 765

F.2d 31, 37 (3d Cir.1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir.1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D.Pa.1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan*, 970 F.3d 1178, 1184-85 (3d Cir.1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir.2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose

whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317,

*quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all

medical findings that support a treating physician's assessment that a claimant is disabled, and

can only reject a treating physician's opinion on the basis of contradictory medical evidence, not

on the ALJ's own credibility judgments, speculation or lay opinion. *Morales v. Apfel*, 225 F.3d

310, 317-18 (3d Cir. 2000)(citations omitted).

> Moreover, the Commissioner/ALJ:

> must "explicitly" weigh all relevant, probative and available evidence . . . . [and]
> must provide some explanation for a rejection of probative evidence which would
> suggest a contrary disposition . . . . The [Commissioner] may properly accept
> some parts of the medical evidence and reject other parts, but she must consider
> all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli*, 247 F.3d at 42-43

(although an ALJ may weigh conflicting medical and other evidence, he or she must give some

indication of the evidence that he or she rejects and explain the reasons for discounting the

evidence; where an ALJ failed to mention significant contradictory evidence or findings, the

Court was left to wonder whether he considered and rejected them, or failed to consider them at

all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence

consistent with the requirements of the applicable regulations and the law of this circuit....");

*Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must

consider all evidence before him . . . . Although the ALJ may weigh the credibility of the

evidence, he must give some indication of the evidence which he rejects and his reason(s) for

discounting such evidence . . . . 'In the absence of such an indication, the reviewing court cannot

tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at

705.") (additional citations omitted).

Medical Source Opinion of "Disability"

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir.1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. § 404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. § 404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. § 404.1527(b), (d) (2002) [6]. Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they must always be considered. 20 C.F.R. § 404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled

---

[6] Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d) (6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner [7], these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored . . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2). *See note 4, supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory

---

[7] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527(d)(1- 6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(I). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

## V.    Discussion

Ambrosini's main contention is that the ALJ's decision that his history of substance abuse is a factor material to a finding of disability is not supported by substantial evidence. Specifically, Ambrosini argues that the ALJ erred, as a matter of law, when despite finding him *per se* disabled when including his substance abuse, the ALJ improperly found that if he stopped his substance abuse, that he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R.§ 416.920(d)).  Doc. No. 11, 13.  Ambrosini argues that finding was error because it was "nothing more than an inference and is unsupported by any of the medical evidence."  Doc. No. 11, 13.  The Commissioner argues that substantial evidence supports the ALJ's determination that if Ambrosini abstained from substance abuse, he would not have any listed impairment and would be capable of performing the minimal mental demands of the unskilled medium work the VE identified. Doc. No. 10. 11.  The question before this Court is whether the ALJ's finding that Ambrosini's substance abuse was a "contributing factor material to" the underlying disability finding is "supported by substantial evidence."  That question must be answered in the negative.

 In his decision, the ALJ applied regulations promulgated under the Contract With America Act of 1996, Public Law 104-121, which provides that "an individual shall not be considered to be disabled . . . . if alcoholism or drug addiction would . . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(c), § 1382c(a)(3)(J).  In doing so, the ALJ concluded that though Ambrosini's allegations of severe mental impairments that would prevent gainful activity were credible, if Ambrosini stopped his substance abuse, his remaining impairments, though severe, would not meet or medically equal any of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)).  R. 12.

The ALJ specifically noted that if Ambrosini ceased his substance abuse, he would have mild restrictions in the activities of daily living, moderate difficulties with regard to concentration, persistence or pace, and "would experience no repeated episodes of decompensation."  R. 12.  The ALJ continued, "when the claimant is not using drugs, the

evidence shows that the claimant appears to improve. He very quickly stabilized while hospitalized and prescribed medications were properly administered and illicit drugs were not taken." R. 12.

As the ALJ found at step three of the five step analysis that Ambrosini would not have any impairments or combination of impairments that met or medically equaled any listed impairment if he ceased substance abuse, he proceeded to determine Ambrosini's RFC under 20 C.F.R. § 416.920(e). R. 13. The ALJ concluded that Ambrosini "would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: work must be unskilled involving simple instructions and tasks; must be low stress with no rapid production expectations; and involve no more than occasional interaction with supervisors and co-workers and no contact with the general public." R. 13. The ALJ noted that in determining Ambrosini's RFC, he considered all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence as required by 20 C.F.R. § 416.929 and SSRs 96-4 and 96-7p. R. 13.

The ALJ undertook a two-step process in evaluating Ambrosini's symptoms. R. 13. The ALJ first determined whether there was an underlying medically determinable physical or mental impairment or impairments that could reasonably be expected to produce Ambrosini's pain or other symptoms. *Id.* The ALJ found that if Ambrosini ceased his substance abuse, his "medically determinable impairments could reasonably be expected to produce the alleged symptoms." R. 14. Secondly, the ALJ evaluated the intensity, persistence, and limiting effects of Ambrosini's symptoms to determine the extent to which they limit his ability to do basic work

activities.  R. 12.  If an ALJ finds that a claimant's statements of intensity, persistence or limiting effects are not supported by objective medical evidence, the ALJ must make a credibility finding based on consideration of the entire case record.  R. 13.

The ALJ concluded that Ambrosini's "statements concerning the intensity, persistence and limiting effects of these *symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment*."  (emphasis added) R. 14. In supporting his conclusion, the ALJ first noted that Ambrosini had been inconsistent in reporting his drug use and has not always been committed to treatment to stop drug addiction.  R. 14.  The ALJ also pointed to medical opinion evidence to support his determination that Ambrosini was not credible.  First, Dr. Detore, a consultative psychological evaluator, opined that Ambrosini had marked difficulty in most work-related mental activities.  R. 331.  The ALJ did not fully accept these conclusions as "it appears that this opinion is based primarily on the claimant's reports to Dr. Detore, which are not accurate."  R. 14.  Secondly, the ALJ addressed the state agency medical consultant who found that mental impairments including drug addiction caused "mild restrictions of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentrate, persistence or pace; and no repeated episodes of decompensation."  R. 274-76.  The ALJ again did not fully accept this medical opinion and found it to "be accurate only when claimant is substance free."  R. 14.  There is no medical evidence to support the ALJ's finding that Ambrosini's impairments were solely the result of substance abuse.  Indeed, none of the record evidence identified by the ALJ in his decision sufficiently addresses whether Ambrosini would remain disabled if he did not abuse substances.  R. 8-22.

After discounting two medical opinions and noting Ambrosini's "apparent inconsistency"

in reporting his addictions, the ALJ concluded that his RFC determination is supported by objective medical evidence of record. R. 14. This Court disagrees. As discussed above, an ALJ cannot disregard a "medical opinion based solely on his own 'amorphous impressions', gleaned from the record and from his evaluation of [the claimant]'s credibility." *Morales*, 225 F.3d at 317. Indeed, "the principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving . . . . mental disability." *Morales*, 225 F.3d at 319. Furthermore, "an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgment, speculation or lay opinion." *Morales*, 225 F.3d at 317.

Although the United States Court of Appeals for the Third Circuit has not yet decided which party bears the burden of proving materiality (or lack thereof), when the record indicates that an otherwise "disabled" claimant abuses drugs or alcohol, four Courts of Appeals have held that this burden of proof rests with the claimant. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). Regardless of which party bears the burden of proof however, a materiality finding must be based on medical evidence, and not simply on pure speculation about the effects that drug and alcohol abuse have on a claimant's ability to work. *Sklenar v. Barnhart*, 195 F.Supp.2d 696, 699-706 (W.D.Pa. 2002). While the evidence supporting a finding of materiality need not come in the form of expert psychiatric opinion evidence, it must be sufficiently probative to constitute "substantial evidence" within the meaning of § 405(g). *McGill v. Commissioner of Social Security*, 288 Fed.Appx. 50, 53 (3d Cir.

2008).

In the present case, the ALJ seems to rely on Ambrosini's June 1, 2008, admission to the University of Pittsburgh Medical Center Presbyterian for treatment following a suicide attempt to support his conclusion that Ambrosini was continuing to abuse drugs. R. 15. Indeed, Ambrosini's toxicology screen taken during the June 1, 2008, hospital stay was positive for cocaine, methadone, and THC/marijuana. R. 15.

The ALJ's reliance on the positive drug test to conclude Ambrosini continued to abuse drugs at the time of his decision is misplaced. The positive drug test was taken on June 1, 2008, over nine months before Ambrosini's hearing before the ALJ on March 11, 2009 and over one year before the ALJ's June 8, 2009 decision. R. 23, 19. The time lapse between those events demonstrates that Ambrosini's hospitilization is not determinative of his drug abuse for any time period, but only for the one reasonably preceding his attempted overdose.

Furthermore, even if Ambrosini were continuing to use drugs at the time of the hearing, the ALJ does not cite any medical evidence that Ambrosini's mental health issues function independently from his alleged drug abuse. Indeed, there is nothing in the treatment records "indicating that Plaintiff was continuing to abuse drugs or that his mental health problems were due to a continuing abuse problem." Doc. No. 11, 13. In failing to cite any evidence that Ambrosini's substance abuse and mental impairments were distinct, the ALJ instead relied on his own broad conclusions and inferences that Ambrosini would not be "disabled" if he didn't have substance abuse impairments. ("The undersigned believes that while using drugs, the claimant's impairments and symptoms are severe enough to prevent any work; however; without the drug usage, and with appropriate mental health treatment, the claimant's condition would improve to

24

the point that some work could be performed."). R. 14. The ALJ posits that when Ambrosini "is not using drugs, the evidence shows the claimant appears to improve." R. 12. The ALJ specifically argues that Ambrosini "very quickly stabilized while hospitalized and prescribed medications were properly administered and illicit drugs were not taken." [8] R. 12. This is a medical opinion that is not supported by substantial evidence and is a determination which the ALJ is not qualified to make.

Ambrosini's record is replete with medical opinions that he suffers from serious continuous mental health issues. Ambrosini has consistently sought mental health treatment from March 2007 through the date of the hearing, March 11, 2009. He was first diagnosed with severe anxiety on March 19, 2007, by treating physician, Dr. Mamoon Al Rasheed. R. 235. On June 21, 2007, Dr. Al Rasheed further diagnosed Ambrosini with depression. R. 231. Dr. Ryan, a psychiatrist, of Chestnut Ridge Counseling Services (herein after "Chestnut Ridge") examined Ambrosini beginning on December 10, 2007, and diagnosed him with schizoaffective disorder with dependent personality characteristics. R. 256-57. Throughout their regular appointments, Dr. Ryan further noted Ambrosini suffered from panic attacks, interrupted sleep, and occasionally hearing voices. R. 254. Dr. John Rohar, a psychiatrist, confirmed these diagnoses on March 4, 2008, when he diagnosed Ambrosini with schizoaffective disorder, depression, anxiety, and dependent personality disorder. R. 260. Ambrosini's counseling sessions at Chestnut Ridge prior to his suicide attempt included an increase of anxiety, feelings of isolation

---

[8] Though the ALJ argues that Ambrosini quickly stabilized during his hospitalization following his suicide attempt, he continued to endorse suicidal ideation and doctors at Highland Hospital noted Amrosini suffered from depression and appeared anxious. R. 281, 284. On June 6, 2008, Dr. Shahoud noted, "I'm not sure he was doing fine." R. 281.

and trouble sleeping. R. 318-19. Finally, on April 27, 2009, at the ALJ's request, Ambrosini was examined by Dr. Lanny Detore, E.D. who diagnosed Ambrosini with bipolar I disorder; mood disorder, marked with racing thoughts; mild to moderate paranoid thoughts; and generalized anxiety disorder. R. 336. Dr. Detore's findings contain no opinion regarding the state of Ambrosini's impairments if or when he stopped abusing drugs. *Id.* Nor did Dr. Detore indicate his assessments were based on Ambrosini's impairments during a phase of abstinence. *Id.* Indeed, none of these medical opinions connect Ambrosini's mental health issues with a dependence on substance abuse.

The ALJ relied on these various medical opinions and diagnoses when he found that Ambrosini "has the following severe combination of impairments: Depressive disorder; anxiety disorder; dependent personality disorder; substance abuse disorder with a history of narcotic addiction." R. 11. However, he did not cite any medical opinion that substance abuse either caused or exacerbated these impairments. The ALJ's finding that Ambrosini's substance abuse was material to a determination of disability appears to have been based only on his own conclusion that "when the claimant is not using drugs, the evidence shows that the claimant appears to improve." R. 12.

The problem with the ALJ's reasoning is that the evidentiary record fails to identify any such periods of improvement between Ambrosini's alleged periods of substance abuse and sobriety. Indeed, in seeking to diminish Ambrosini's credibility, the ALJ noted that Ambrosini was inconsistent in self-reporting his substance use. R. 14. With no medical records showing when Ambrosini was or was not sober and no consistent self-reports from Ambrosini, there is no logical way to determine, as the ALJ did, that Ambrosini improves when he is not abusing

26

substances.  Where the effects of a claimant's underlying mental impairments cannot be separated from the effects of his or her substance abuse, a finding of materiality is not warranted. *Salazar v. Barnhart*, 468 F.3d 615, 622-25 (10th Cir. 2006).  Since the record contains no probative evidence that Ambrosini's mental health issues are in any way caused by or interrelated with his substance abuse, there is no substantial evidence to support the determination that Ambrosini would not still be disabled if the substance abuse were to stop as required by 20 C.F.R. § § 404.1535, 416.935.  Therefore, the ALJ's decision is not "supported by substantial evidence" as required by 42 U.S.C. § 405(g).

The Commissioner's argument in support for his motion for summary judgment centers on Ambrosini's failed attempts at substance abuse treatment and his various denials of substance abuse problems to healthcare providers.  Doc. No. 10, 12.  While the record may support these underlying facts, all this demonstrates is that Ambrosini has used drugs, not that drugs caused or materially contributed to his disability, nor do they support an inference that he would not be disabled if he stopped.  The Commissioner further mistakenly relies on instances of inconsistency such as "plaintiff's statement about his inability to afford treatment is belied by the fact that he has a medical card and smokes up to one pack of cigarettes per day."  Doc. No. 10, 14.  Again, this argument is without merit and does not constitute substantial evidence for the ALJ's determination.

In light of the foregoing analysis, the ALJ's decision cannot be affirmed.  The only remaining question is whether a judicially-ordered award of benefits is proper, or whether the case should be remanded to the Commissioner for further administrative proceedings.  An immediate award of benefits is appropriate only when the evidentiary record has been fully

developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled. *Morales*, 225 F.3d at 320.

That standard is not met here. The record does not contain any medical opinion of whether Ambrosini's substance abuse is material to his mental health issues, namely the ALJ's finding that his impairments were: depressive disorder; anxiety disorder; and dependent personality disorder. R. 11. There are also no medical opinions of record to cast any light on whether Ambrosini's mental impairments would subside if he stopped his substance abuse. The ALJ has the option of ordering a consultative examination or examinations to address this issue. In addition, Ambrosini should be afforded an opportunity to supplement the medical evidence to address his contention that his mental impairments would exist independent of any substance abuse. *See Stover v. Shalala*, 1995 WL 327981 * 8 (E.D.Pa. May 31, 1995)("As 42 U.S.C. § 405(g) clearly provides that a court may allow for a rehearing following remand, a rehearing should be held in order to assist the ALJ in correctly assessing Dr. Miller's last report and the report of Ms. Davidow. Stover should be given an opportunity at this rehearing to submit additional relevant evidence.") citing *Rocco v. Heckler*, 826 F.2d 1348 (3d Cir. 1987)("often a diagnosis or prognosis is necessarily only an educated guess that must await later developments to confirm or disprove the doctor's original impression.").

For these reasons, further development of the record is needed.

**VI.     Conclusion**

The ALJ's decision is not "supported by substantial evidence" within the meaning of 42 U.S.C. § 405(g).  Accordingly, the Commissioner's Motion for Summary Judgment (Doc. No. 9) will be denied.  Ambrosini's Motion for Summary Judgment (Doc. No. 8) will be granted to the extent that he seeks a vacation of the administrative decision under review, and the case will be remanded for further proceedings.

An appropriate order follows.


<u>s/ Arthur J. Schwab </u>
Arthur J. Schwab
United States District Judge


cc:     All counsel of record